**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**
Thurgood Marshall U.S. Courthouse   40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

**MOTION INFORMATION STATEMENT**

Docket Number(s): **15-2997**    Caption [use short title]

Motion for: **Expedited Review.**

**John Doe v. Middlebury College**

Set forth below precise, complete statement of relief sought:

**Appellant-Defendant requests an expedited schedule for briefing, oral argument and disposition of this appeal.**

MOVING PARTY: **Middlebury College**    OPPOSING PARTY: **John Doe**

☐ Plaintiff  ☑ Defendant
☑ Appellant/Petitioner  ☐ Appellee/Respondent

MOVING ATTORNEY: **Karen McAndrew, Esq.**    OPPOSING ATTORNEY: **Lisa B. Shelkrot, Esq.**

[name of attorney, with firm, address, phone number and e-mail]

**209 Battery Street, P.O. Box 988**    **210 College Street, P.O. Box 721**

**Burlington, VT 05402**    **Burlington, VT 05402**

**(802) 864-5751; KMcandrew@dinse.com**    **(802) 864-0217; LShelkrot@langrock.com**

Court-Judge/Agency appealed from: **United States District Court for the District of Vermont (Garvan Murtha, J.)**

Please check appropriate boxes:

Has movant notified opposing counsel (required by Local Rule 27.1):
☑ Yes ☐ No (explain):_____

Opposing counsel's position on motion:
☐ Unopposed ☑ Opposed ☐ Don't Know
Does opposing counsel intend to file a response:
☐ Yes ☐ No ☑ Don't Know

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUNCTIONS PENDING APPEAL:**
Has request for relief been made below?  ☐ Yes ☐ No
Has this relief been previously sought in this Court?  ☐ Yes ☐ No
Requested return date and explanation of emergency:
_____

Is oral argument on motion requested?  ☐ Yes ☑ No   (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set?  ☐ Yes ☑ No   If yes, enter date:_____

Signature of Moving Attorney:
**/s/Karen McAndrew**    Date: **9/25/15**    Service by: ☑ CM/ECF  ☐ Other [Attach proof of service]

**Form T-1080** (rev. 12-13)

# UNITED STATES COURT OF APPEALS
## FOR THE
## SECOND CIRCUIT

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | Docket No.: 15-2997 |
| Appellee-Plaintiff, | ) | |
| | ) | On Appeal from the United States |
| v. | ) | District Court for the District of |
| | ) | Vermont |
| MIDDLEBURY COLLEGE, | ) | |
| | ) | |
| Appellant-Defendant. | ) | |

## APPELLANT'S MOTION FOR EXPEDITED REVIEW

NOW COMES Appellant-Defendant Middlebury College ("Middlebury" or the "College") and moves pursuant to Fed. R. App. P. 2 for expedited review of this appeal[1] from a preliminary injunction issued after a non-evidentiary hearing by the United States District Court for the District of Vermont (Murtha, J.) ordering that Middlebury readmit[2] for the fall 2015 semester Appellee-Plaintiff John Doe, a student who was expelled from Middlebury after the College found him responsible for the forcible rape of a sleeping woman. In the absence of expedited review, a decision will not likely be issued before Doe completes the fall semester,

---

[1] The College filed its Notice of Appeal on September 23, 2015.

[2] The District Court's order stated specifically that "Middlebury College shall not expel Plaintiff and shall allow him to remain enrolled in his courses for the fall 2015 semester," Addendum A at 9, but as referenced herein and as will be explained in further detail in Middlebury's brief, Middlebury expelled Doe by a decision of its President on August 26, 2015.

which would deprive Middlebury of a meaningful opportunity to challenge the order, undermine its disciplinary authority, and curtail the College's ability to take appropriate steps to promote the safety of its campus community. Accordingly, Middlebury requests that the Court adopt the proposed schedule outlined below and issue a decision in this matter by December 4, 2015.

## BACKGROUND

John Doe enrolled as a student at Middlebury for the spring 2013 semester. In 2014, he attended a study abroad program administered by the School for International Training ("SIT"), based in Brattleboro, Vermont. While attending the study abroad program, another (non-Middlebury) student in the program reported that Doe sexually assaulted her during the program. SIT conducted a brief investigation and hearing and found Doe not responsible. Doe expected to and did receive Middlebury credit for the coursework he completed in the SIT program.

Doe returned to Middlebury in January 2015. After being contacted by the non-Middlebury student, identified for purposes of this litigation as "Jane Doe," and reviewing the information she provided, administrators at Middlebury became concerned about the seriousness of the allegations and the adequacy of the SIT investigation and hearing process. Given those concerns, Middlebury undertook its own investigation beginning in January 2015, pursuant to its general student conduct standards, which authorize Middlebury to take disciplinary action against

2

a Middlebury student for off-campus conduct where the conduct alleged, if proven, "may represent a threat to the safety of the Middlebury community or any of its members, the pursuit of its objectives, and/or the educational environment of others." Addendum B (Middlebury Community Standards and Policy Overview); Addendum C (Middlebury Policy Against Sexual Misconduct, Domestic Violence, Dating Violence and Stalking, § 11).

Middlebury's investigation was detailed and thorough, consuming several months of work, as most of the witnesses other than John Doe were enrolled at other colleges, and several persons with relevant information were located overseas. At the conclusion of the investigation, in July 2015, Middlebury determined that Doe violated the College's Sexual Misconduct, Domestic Violence, Dating Violence and Stalking policy, by engaging in non-consensual, forcible sexual intercourse with Jane Doe while she was asleep. On July 24, 2015, John Doe was expelled. He exhausted Middlebury's appeal processes and, on August 26, 2015, the expulsion became final by order of Middlebury's President, which was communicated to him on that date.

On August 28, 2015, John Doe filed an action against Middlebury in the United States District Court for the District of Vermont, alleging breach of contract, breach of the covenant of good faith and fair dealing, and violation of Title IX of the Education Amendments of 1972. At the same time, Doe moved for

a preliminary injunction reinstating his enrollment at Middlebury during the pendency of the action. Middlebury opposed the motion and, on September 15, 2015, the District Court heard oral argument.

On September 16, 2015, the District Court granted Doe's motion and issued a preliminary injunction ordering that Middlebury "not expel Plaintiff and shall allow him to remain enrolled in his courses for the fall 2015 semester." *See* Addendum A at 9. The District Court found that: (1) Doe would likely suffer irreparable harm if not reinstated pending a final determination on the merits; (2) Doe presented a sufficiently serious question going to the merits of his contract claim to make it fair ground for litigation; (3) the balance of hardships tipped in his favor; and (4) the public interest does not strongly weigh in favor of denying the motion for preliminary injunction. *Id*. at 6-9.

Middlebury timely filed a Notice of Appeal in the District Court on September 23, 2015 pursuant to 28 U.S.C. § 1292(a)(1).

## ARGUMENT

The Court may, for good cause, expedite its decision on an appeal by suspending the generally-applicable rules and ordering proceedings as it directs. Fed. R. App. P. 2. Good cause for establishing an abbreviated schedule for briefing and oral argument exists here because, in the absence of expedited review,

Middlebury will be unable to obtain appellate review of the preliminary injunction before John Doe completes the fall 2015 semester.

The District Court's order requires Middlebury to allow Doe to attend fall 2015 semester classes. *See* Addendum A at 9. Fall classes are scheduled to end on December 11, 2015, with final examinations concluding on December 20, 2015. This appeal will not likely be ripe for decision until after the fall semester is over if it proceeds under the ordinary briefing schedule established by Second Circuit Local Rule 31.2, making it exceedingly unlikely that a decision will issue before the semester concludes.[3] In the absence of an expedited briefing schedule, Middlebury will be foreclosed from challenging the preliminary injunction order because, by the time a decision is issued, Doe likely will have completed his fall semester classes and examinations and the injunction may become moot.

Delayed decision on the preliminary injunction in this or any similar case will also effectively preclude Middlebury from exercising its disciplinary authority over Doe and determining who will have access to an education at Middlebury during the fall 2015 semester.

Middlebury has a substantial interest in promoting campus safety. Although the District Court minimized the risk posed by John Doe, *see* Addendum A at 7-8, the preliminary injunction requiring Middlebury to reinstate a student whom it has

---

[3]     Local Rule 31.2(a)(1)(B) allows Doe up to 91 days after the College's brief is filed and served to submit his brief. If Doe were to file his brief at the end of that period, the fall semester would already be over.

found to have committed a forcible rape undermines Middlebury's efforts to ensure campus security and favors expedited review.

Doe will suffer no unfair prejudice if this appeal is expedited. The issues are well-defined and have been briefed extensively below. Shortening the time for preparing an appeal brief will not impose an undue burden on either party.[4]

Accordingly, Middlebury requests that the Court approve the following deadlines for this appeal:

| | |
|---|---|
| October 14, 2015: | Appellant's Principal Brief |
| November 5, 2015: | Appellee's Brief in Opposition |
| November 13, 2015: | Appellant's Reply Brief |
| November 20, 2015: | Oral Argument |
| December 4, 2015: | Decision |

## CONCLUSION

For all of the foregoing reasons, Middlebury College respectfully requests that the Court issue a scheduling order consistent with the proposal described above.

---

[4] The undersigned has conferred with opposing counsel regarding this request for expedited review. Counsel for John Doe advised that she does not believe expedited briefing is warranted here, but is able to comply with Middlebury's proposed briefing schedule should it be accepted by the Court.

Dated at Burlington, Vermont, this 25th day of September, 2015.

DINSE, KNAPP & McANDREW, P.C.


By:\_\_\_\_/s/ Karen McAndrew, Esq.
Karen McAndrew, Esq.
209 Battery Street
P. O. Box 988
Burlington, VT  05402-0988
(802) 864-5751
kmcandrew@dinse.com

# Addendum A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

JOHN DOE,                          :
                                   :
          Plaintiff,               :
                                   :
     v.                            :       Case No. 1:15-cv-192-jgm
                                   :
MIDDLEBURY COLLEGE,                :
                                   :
          Defendant.               :
_____          :

RULING ON EMERGENCY MOTION FOR PRELIMINARY INJUNCTION
(Doc. 4)

I.     Introduction

Plaintiff John Doe[1] (Plaintiff) moves for a preliminary injunction under Federal Rule of Civil

Procedure 65(a) against Defendant Middlebury College ("Middlebury" or Defendant).  (Doc. 4.)  He

requests Middlebury be enjoined from expelling him and from preventing him from attending

courses for the fall 2015 semester.  This breach of contract action[2] was filed August 28, 2015, based

on diversity jurisdiction under 28 U.S.C. §§ 1331 and 1332[3], and arises out of Middlebury's handling

of a complaint of sexual misconduct against Plaintiff.  (Doc. 1 (Compl.).)  Plaintiff asserts

Middlebury's investigation and decision were biased, unfair, and discriminatory and in violation of

Middlebury's policies.  Defendant opposes the motion for preliminary injunction.  (Doc. 15.)

Plaintiff filed a reply.  (Doc. 20.)  Having considered the parties' memoranda and arguments

presented at the September 15, 2015 hearing, for the following reasons, the motion is granted.

_____

[1] Plaintiff's motions to proceed under a pseudonym (Doc. 2) and to seal certain exhibits submitted in support of the motion for preliminary injunction (Doc. 5) are not fully briefed.

[2] Doe also alleges breach of the implied covenant of good faith and fair dealing and violation of Title IX of the Education Amendments of 1972.  (Compl. ¶¶ 156-65.)  He seeks preliminary and permanent injunctive relief, expungement of his record, damages, and attorneys fees.  Id. at 25-26.

[3] Doe, a United States citizen, is not a Vermont resident.  (Compl ¶ 13.)  Middlebury College is a private liberal arts college in Middlebury, Vermont.  Id. ¶ 14.

II.     Background[4]

Plaintiff enrolled as a freshman at Middlebury College for the spring 2013 semester.  In November 2014, while on a study abroad program with the School for International Training ("SIT"), Plaintiff was accused of sexual misconduct.  The complainant was also a participant in the program but was and is not a Middlebury College student.  Under its policies, SIT investigated the complaint and held a hearing, after which Plaintiff was exonerated in December 2014.  SIT kept Middlebury informed regarding the complaint, investigation, hearing, and outcome.  Middlebury allowed Plaintiff to return to campus and classes in January 2015.

Plaintiff alleges that as a result of pressure from the complainant and administrators at her college--including notice that the complainant was dissatisfied with SIT's process and intended to file a complaint with the Department of Education's Office of Civil Rights--Middlebury decided to conduct its own investigation and de novo consideration of the complaint.  On January 23, 2015, Plaintiff was informed Middlebury administrators had decided to conduct an investigation of the allegations under the authority of the Scope of Oversight section of the Sexual Misconduct, Domestic Violence, Dating Violence and Stalking ("SMDVS") policy referring to conduct that occurs off-campus but may represent a threat to the safety of the Middlebury community.  Plaintiff asserts this action--undertaking a second de novo investigation and determination of the sexual assault allegation--was not authorized because Middlebury's policies pertaining to study-abroad programs and its agreements with Plaintiff prior to his participation indicated Plaintiff would be subject to the policies and discipline of the host institution, in this case SIT.

---

[4] The September 15 hearing was not evidentiary.  At this stage in the litigation, the facts are gleaned primarily from the Complaint and review of the exhibits and affidavits supplied by the parties in connection with the pending motion.

2

Middlebury hired a lawyer who took approximately five months to complete her investigation.[5]  A Middlebury human resources officer ("HRO") met with Plaintiff and made findings based on the lawyer's report, concluding Plaintiff violated Middlebury's SMDVS policy. No hearing was held.  Plaintiff was provided the investigation report and findings and decision in July 2015.  On July 24, 2015, Middlebury's Vice President for Student Affairs and Dean of the College issued a sanction expelling Plaintiff.  Plaintiff's July 28 appeal to the Vice President for Academic Affairs was denied on August 4.  On August 11, Plaintiff submitted a final appeal to the Middlebury College President and met with her on August 24.  On August 26, the President denied Plaintiff's final administrative appeal.  Plaintiff filed this action on August 28, 2015.

The fall semester begins September 16, 2015.  Plaintiff had access to his Middlebury email and student record accounts as of September 11.  He notes his account listed his enrollment as "active," showing he was enrolled in courses and listing his room assignment for the fall 2015 semester.  On September 1, Plaintiff received an email from Middlebury's Office of Financial Aid reiterating their request for information for his financial aid application and, on September 9, he received an invoice requesting his tuition payment for the fall 2015 semester.[6]  (Doc. 20 at 5.)

Plaintiff expected to graduate from Middlebury in 2016.  In the summer of 2015, he completed an internship, normally offered to rising college seniors, that resulted in an offer for a job to begin in July 2016.  The job offer, contingent upon his graduation from Middlebury, is for a

---

[5] The SMDVS requires the investigation of a complaint be completed within 45 days from the time of the complaint absent extenuating circumstances.  Middlebury asserts extenuating circumstances existed given the complexity of the case and availability of witnesses, some of whom were outside the United States.

[6] At oral argument on the pending motion, Middlebury represented that Plaintiff's expulsion had been stayed during his appeal of the sanction to the President and it was a "computer glitch" and "purely an oversight" that Plaintiff remained listed as an enrolled student.

position with an $85,000 per year salary, and includes a $10,000 signing bonus and $5,000 relocation stipend.

III.    Legal Standard

Preliminary injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing the plaintiff is entitled to such relief." Winter v. Natural Res. Def. Council, 129 S. Ct. 365, 376 (2008); see also Sussman v. Crawford, 488 F.3d 136, 139 (2d Cir. 2007) (describing preliminary injunction as "extraordinary and drastic remedy"). The decision to either grant or withhold equitable relief "rests in the sound discretion of the court." Petrol. Expl., Inc. v. Pub. Serv. Comm'n of Ky., 304 U.S. 209, 218 (1938).

A court may enter a preliminary injunction when the moving party can establish "(1) irreparable harm and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party." Oneida Nation of N.Y. v. Cuomo, 645 F.3d 154, 164 (2d Cir. 2011) (internal quotation marks and citation omitted).[7] Additionally, the moving party must show that a preliminary injunction is in the public interest. Id.; see also Winter, 129 S. Ct. at 374 (the moving party "must establish that he is likely to succeed on

---

[7] Middlebury argues a higher standard--requiring Plaintiff to demonstrate "'a clear or substantial likelihood of success on the merits'"--applies because an injunction will provide Plaintiff with substantially all the relief sought and the relief cannot be undone and because Plaintiff seeks to alter rather than maintain the status quo. (Doc. 15 at 10-11 (quoting Koppell v. N.Y. State Bd. of Elections, 153 F.3d 95, 96 (2d Cir. 1998)).) An injunction would not provide Plaintiff with all the relief he seeks: allowing Plaintiff to attend classes for the fall semester does not expunge his record or preclude Middlebury from refusing to award or revoking a diploma. The Court does not view the injunction as altering the status quo where Plaintiff sought a preliminary injunction seeking to prevent interruption in his pursuit of a degree two days after the denial of his final administrative appeal, was listed on Middlebury's student record account as an "active" student enrolled in courses as of September 11, 2015, and was recently contacted by the financial aid office and billed for the fall 2015 semester.

4

the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the

balance of equities tips in his favor, and that an injunction is in the public interest.").

IV.     Discussion

        A.     Irreparable Harm

        A showing that irreparable harm is likely in the absence of preliminary relief is "the single

most important prerequisite for the issuance of a preliminary injunction." Rodriquez v. DeBuono,

175 F.3d 227, 233-34 (2d Cir. 1999). Without it, a preliminary injunction cannot be issued.

Irreparable harm is "certain and imminent harm for which a monetary award does not adequately

compensate." Wisdom Imp. Sales Co. v. Labatt Brewing Co., 339 F.3d 101, 113 (2d Cir. 2003);

see also Nat'l Elevator Cab & Door Corp. v. H &B, Inc., No. 07-CV-1562, 2008 WL 207843, at *6

(E.D.N.Y. Jan. 24, 2008) ("[T]he question is not whether the plaintiff has suffered irreparable harm,

but whether it will be irreparably harmed in the absence of an injunction. In other words, the

injunction must prevent or remedy the harm.").

        Plaintiff claims he will suffer irreparable harm in the absence of an injunction because he has

a job offer, to begin in July 2016, contingent on the successful completion of his degree at

Middlebury. (Doc. 4 at 5-6.) If Plaintiff is not permitted to begin his senior year in September 2015,

he will not complete his degree before July 2016 and will lose the job. Plaintiff asserts another job

in this field will be difficult to secure because the job offers stem from successful completion of an

internship offered to students entering their senior year of college. While Plaintiff may recover

money damages to compensate for lost wages, money damages cannot compensate for the loss of

his senior year in college with his class, the delay in the completion of his degree, or the opportunity

to begin his career in July 2016 with this particular employment.[8] Further, Plaintiff would have to

---

        [8] Middlebury relies on Freeman v. Rochester Psychiatric Center, No. 12-cv-6045T, 2015 WL
4250892 (W.D.N.Y. July 10, 2015) (report and recommendation recommending denial of

5

explain, for the remainder of his professional life, why his education either ceased prior to completion or contains a gap. See King v. DePauw Univ., No. 2:14-cv-70, 2014 WL 4197507, at *13 (S.D. Ind. Aug. 22, 2014) (finding irreparable harm where plaintiff would "forever have either a gap or a senior-year transfer on his record," noting the inevitability of questions by future employers or graduate schools for which "any explanation is unlikely to fully erase the stigma"). Money damages cannot provide an adequate remedy for such imminent and non-speculative harm. This case presents a unique situation where Plaintiff was exonerated of the charge of sexual assault by one U.S. institution following an investigation and hearing, allowed to continue his studies the next term, and subsequently determined by his college following a second investigation of the same allegation to have committed sexual assault, after which he was expelled. The Court finds Plaintiff is likely to suffer irreparable harm if he is expelled from Middlebury College pending a final determination on the merits in this action.

---

preliminary injunction) for the proposition that loss of a particular job or income, damage to reputation, or difficulty finding other employment do not rise to the level of irreparable harm. (Doc. 15 at 11-12.) While it may be true that, in employee discharge cases, inability to find other employment does not generally establish irreparable harm, the magistrate judge also notes extraordinary circumstances may justify injunctive relief in "rare situations where the harm generated by loss of employment extends beyond financial boundaries that cannot be adequately remedied by a later award of damages." Id. at *2 (internal quotation marks and citation omitted) (recommending denial of injunction that would require plaintiff be paid during suspension from work). Here, the Court finds Plaintiff has demonstrated a situation where the harm extends beyond simply loss of the job and salary offered and cannot be entirely remedied by money damages, or even by delayed graduation from Middlebury College. See Doe v. N.Y. Univ., 666 F.2d 761, 773 (2d Cir. 1981) (distinguishing "delay in obtaining admission to a graduate school," which ordinarily would not constitute irreparable harm, from "interruption or termination of attendance already in progress"), superseded by rule as recognized in Zervos v. Verizon N.Y., Inc., 252 F.3d 163 (2001) (holding standard of review of a district court's decision on a motion for preliminary injunction is abuse of discretion regardless of whether the district court heard live testimony).

B.      Merits

At this early stage in the litigation, Plaintiff has demonstrated sufficiently serious questions going to the merits of his breach of contract claim to make them fair ground for litigation.[9]  He alleges he and Middlebury have a contract between them under which he paid tuition for his education and the college provides access to its undergraduate degree program.  He asserts Middlebury has breached duties it owes Plaintiff by instituting and prosecuting an investigation and adjudication in violation of its policies and procedures.  Specifically, Middlebury's policies did not authorize a second investigation and de novo evaluation of the allegation of sexual assault after it had been decided in Plaintiff's favor by SIT, the sponsor of the study abroad program during which the alleged misconduct occurred, to whose discipline Plaintiff was subject.  As a result of Middlebury's breach, Plaintiff has suffered the harm of expulsion and--in the absence of an injunction--the concomitant loss of a job, emanating from a completed summer internship program offered to rising college seniors, that depends upon his graduation in 2016.  The Court finds Plaintiff has demonstrated a sufficiently serious question regarding whether Middlebury violated its policies in conducting a second investigation of the charge of sexual assault against Plaintiff after he was exonerated by one U.S. institution following an investigation and hearing.

C.      Balance of Hardships

While the Court has found Plaintiff is likely to suffer irreparable harm if he is expelled, it is unlikely Middlebury will suffer great damage or loss as a result of the issuance of a preliminary injunction preventing the expulsion of Plaintiff for the fall semester.  Plaintiff was permitted to return to classes on the Middlebury campus in January 2015, following the alleged assault, and remained a student during the investigation throughout the semester.  Indeed, Plaintiff remained

---

[9] Plaintiff also asserts violations of the covenant of good faith and fair dealing implied in his contract with Middlebury and Title IX of the Education Amendments of 1972.

7

listed on Middlebury's student record account as an "active" student enrolled in courses as of

September 11, and Middlebury recently billed Plaintiff for the fall 2015 semester. This course of

action, and lack of restriction on Plaintiff's conduct while on campus, indicates Middlebury does not

view Plaintiff as a threat to the Middlebury community. The Court notes Plaintiff has indicated his

willingness, as a precaution, to refrain from entering on-campus residences and to report to an

advisor. See Doc. 20 at 2, 11.

The Court is aware colleges have a difficult role in dealing with allegations of sexual

misconduct. While Middlebury will suffer interference with its process and sanction if the Court

grants the motion, if Middlebury prevails on the merits, it can refuse to award, or revoke, Plaintiff's

diploma and maintain Plaintiff's disciplinary record in its files. The harm Middlebury will suffer if

Plaintiff is allowed to remain a student for the fall semester is not as great as the harm Plaintiff will

suffer if he is not permitted to return to campus but ultimately prevails in the case. See King v.

DePauw Univ., 2014 WL 4197507, at *14 (finding the balance of harm firmly in student's favor even

though university has "interest in enforcing its own rules of conduct pursuant to its own

procedures" and is harmed by having its actions second-guessed by a court because "the harm

[university] will have suffered by [student's] court-ordered return to campus this fall, while real, will

not be as great as the harm [student] will have suffered if he is not permitted to return to campus

but ultimately wins"). Accordingly, the Court finds the balance of hardships tips decidedly in favor

of Plaintiff.

D.      Public Interest

While the public interest lies in maintaining campus safety, Plaintiff remained a student at

Middlebury, returning to campus following the study-abroad program during which the alleged

assault occurred, with no further incidents and there is no indication Plaintiff poses a current threat

to campus safety. The Court notes the person who accused Plaintiff of the assault is not a party to

8

this suit and is not a Middlebury student so Plaintiff's attendance for the fall 2015 semester will not have a direct effect on her.  Accordingly, consideration of the public interest does not strongly weigh in favor of denying the motion for preliminary injunction.

V.      Conclusion

Based upon its consideration of the relevant factors, the Court, in its discretion, finds a preliminary injunction allowing Plaintiff to attend fall classes is appropriate.  Accordingly, Plaintiff's Emergency Motion for a Preliminary Injunction (Doc. 4) is GRANTED.  Middlebury College shall not expel Plaintiff and shall allow him to remain enrolled in his courses for the fall 2015 semester beginning September 16, 2015.  Plaintiff need not give security at this time, as the Court finds it is unlikely Defendant will suffer costs or damages.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 16th day of September, 2015.

/s/ J. Garvan Murtha
Hon. J. Garvan Murtha
United States District Judge

# Addendum B

Search Midd

Quick Facts
Middlebury's Mission
Governance
President of Middlebury
Senior Leadership
College Handbook
    General Information
    Safety & Emergency
    College Governance
    Academics
    Athletics
    Library
    Information Technology
    Services
    Student Life Policies
    • Community Standards
      and Policy Overview
    • General Conduct
    • Academic Honesty
      Policies and Honor
      Code
    • Hazing Policy
    • Alcohol and Other
      Drugs
    • Policy Against Sexual
      Misconduct, Domestic
      Violence, Dating
      Violence and Stalking
    • Anti-
      Harassment/Discrimination
      Policy
    • Residential Policies
    • Student Organizations
      and Activities
    • General Disciplinary
      Processes
    • Student Health Policies
    • Americans with
      Disabilities Act Policy
    • Service and Assistance
      Animals Policy
    • Student Fines and
      Fees
    Student Finances
    Faculty Handbook
    Employee Handbook
    Other Policies and
    Information
    Previous Handbooks
History & Traditions
Middlebury Campus

Home » About Middlebury » College Handbook » Student Life Policies » Community Standards and Policy Overview

# Community Standards and Policy Overview

## Community Standards

Middlebury College seeks to prepare students to be active citizens and leaders who will address the world's most pressing problems. This mission is advanced through students' experiences with successes and challenges, and is reflected in the following Community Standards:

- cultivating respect and responsibility for self, others, and our shared environment;
- encouraging personal and intellectual courage and growth;
- manifesting integrity and honesty in all decisions and actions;
- promoting healthy, safe and balanced lifestyles;
- fostering a diverse and inclusive community committed to civility, open-mindedness and finding common ground.

Therefore, a balance of individual and community health and growth guides Middlebury's approach to all endeavors, and to the policies that support those endeavors.

## Student Life Policy Overview

The above Community Standards guide the College's approach to policy, and to addressing policy violations. The deans and judicial boards consider the totality of a student's history, the impact on community, and the specific circumstances of the event when determining appropriate responses to policy violations. Consistent with the cultivation of an awareness of responsibility and accountability, students found in violation of College policies and/or participating in prohibited acts will be held responsible, and/or will be subject to College discipline, and/or will be charged for fines and associated costs (such as materials or labor costs for repairs; cost of impoundment; restitution, etc.) as appropriate. As with all College fees, students with unpaid charges may be restricted from registering for classes until their accounts are in order. Please see General Disciplinary Processes and Student Fines and Fees for more information.

Handbook policies are set forth in writing in order to give students general notice of our Community Standards, and of resulting prohibited conduct. The Handbook and its policies are intended to be read broadly and are not designed to define misconduct in exhaustive terms. Attempts to commit acts prohibited in this Handbook may also lead to disciplinary action and sanctions.

## Emergency Withdrawal, Suspension, or Dismissal

In addition to fostering the growth of its individual students, Middlebury College recognizes its obligation to promote the welfare of the College community as a whole and to take appropriate action when that welfare is jeopardized. To that end, the College reserves the right, notwithstanding and apart from the procedures described under General Disciplinary Processes, on an emergency basis, to suspend, dismiss, or require to withdraw any student whose presence at the College is determined by College authorities (the dean of the College; the dean of students, the vice president for Language Schools, Schools Abroad and Graduate Programs; the director of the Bread Loaf School of English; or the director of the Bread Loaf Writers' Conference, as appropriate) to pose a danger to the College community or its members or to be unduly disruptive of College life, or who appears to be unwilling or incapable of effectively and/or safely participating in the College's academic or other programs and/or the residential life of the College. In cases of emergency suspension or required withdrawal, the conditions and procedures for readmission will be determined and communicated in writing to the student at the time of the student's departure or shortly thereafter.

The College recognizes that its students are citizens of larger communities—local, state, and federal—and enjoy the same rights of petition and freedoms of speech and peaceful assembly that other citizens enjoy. Faculty and administrative officials should ensure that College authority is not used to inhibit the intellectual

| Centers & Facilities |
| Fund for Innovation |
| Copyright |
| Privacy |
| Site Editor Log On |

and personal growth of students, fostered by the exercise of the rights of citizenship, both on and off campus.

**Scope of Oversight**

Students will be held accountable for policy violations that take place between the time they first arrive on campus to begin their Middlebury program and their graduation, or the College's confirmation of their resignation or expulsion. Conduct that takes place on or near Middlebury premises or property; occurs at or in connection with a Middlebury-related event; or occurs off-campus but may represent a threat to the safety of the Middlebury community or its members, the pursuit of its objectives, and/or the educational environment of others, may be subject to the College disciplinary process. In cases where a student is found responsible for a policy violation while participating in any Middlebury program, the finding of responsibility may also be referred to the appropriate authority overseeing any additional Middlebury program in which the student is or will also be enrolled for other action as deemed appropriate. This may include but is not limited to: further investigation; additional adjudication under existing policies (using only information gathered in the first disciplinary process, or using subsequently gathered information, or both, as deemed appropriate by the overseeing authority); disciplinary action; or other remedies or processes deemed appropriate by the authority overseeing the additional Middlebury program.

**Pending Discipline**

A student will not be permitted to graduate while a disciplinary matter is pending; the student's graduation will be held in abeyance until the matter is resolved. Nor will a student ordinarily be permitted to withdraw with a disciplinary matter pending. If a student nevertheless withdraws with a disciplinary matter pending, the withdrawal will be considered a resignation from Middlebury, and the student will have given up the opportunity to return to the College. Notation will be made in the student's permanent file that the student has withdrawn with a disciplinary matter pending, or with an appeal of disciplinary outcome pending, as appropriate. In extraordinary circumstances, however, the dean of the College may, after appropriate consultation, a review of the case, and consideration of the College's best interests, grant permission for a student to withdraw from the College when a disciplinary matter is pending. Should the student be readmitted to the College, the disciplinary matter must be resolved either before the student's return, or immediately upon the student's return. See Student Status for more information.

**Deadlines**

Several Student Life policies include deadlines. Unless otherwise noted, "days" indicates calendar days, regardless of whether the majority of Middlebury's administrative offices are open. "Business days" indicates days on which the majority of Middlebury's administrative offices are open, and generally connotes Mondays through Fridays.

Current Students     Parents     Faculty & Staff     Alumni                    Quick Links     Directions & Contact Information

# Addendum C

# Middlebury

Home » About Middlebury » College Handbook » Other Policies and Information » Policy Against Sexual Misconduct, Domestic Violence, Dating Violence and Stalking

## Policy Against Sexual Misconduct, Domestic Violence, Dating Violence and Stalking

**Effective August 11, 2014. The policies, procedures and information outlined herein supersede previous Middlebury policies, procedures and information on the same topics.**

1. Introduction

2. Definitions

3. Confidentiality

4. Retaliation

5. Emergencies

6. Services and Accommodations

7. Pursuing a Criminal Complaint

8. Medical Care and Evidence Preservation

9. Reporting Requirements for Staff and Faculty

10. **Complaint Investigation and Resolution Procedures**

    (A) In General
    (B) Complaints Directed to the HRO or JAO (includes Rights of Complainants and Rights of Respondents)
    (C) Complaint Receipt and Review

(D) Investigation Overview
(E) Investigation
(F) Determination and Sanction
(G) Time Frames for the Investigation and Adjudication
(H) Appeals

11. Scope of Oversight (Students)

12. Pending Discipline (Students)

13. Emergency Withdrawal, Suspension, or Expulsion (Students)

14. Training

15. Plans or Directives Issued by Middlebury Officials

16. Cooperation of all Parties

17. Policy Access

18. Disabilities

19. Record Keeping

Appendix A: Applicable Definitions: State and Federal Law
Appendix B: Contact Information
Appendix C: Resources
Appendix D: Title IX Coordinator
End Notes

## 1. Introduction

Middlebury College ("Middlebury") is committed to providing a campus and workplace environment that is safe and secure for all students, staff, faculty and others who participate in Middlebury's programs. Sexual misconduct, domestic violence, dating violence, stalking, and related retaliation, as defined by the law in the state where the conduct allegedly occurs and/or the corresponding terms of this policy, are strictly prohibited. Middlebury will take reasonable, prompt and appropriate action to respond to sexual misconduct, domestic violence, dating violence, stalking and related retaliation where such conduct impacts or has the potential to impact the

permitted by law.

**(l) Disposition Without Adjudication**

If at any point a respondent chooses to accept responsibility for violating all policies under investigation, the HRO will issue a determination and refer the matter to the appropriate supervisory authority or authorities for the program at issue in accordance with Section 10.F.6, above. In all cases, the appropriate supervisory authority or authorities will issue a sanction and/or take other action that is reasonably calculated to address the prohibited conduct and prevent its recurrence.

## 11. Scope of Oversight (Students)

Students will be held accountable for policy violations that take place between the time they first arrive on campus to begin their Middlebury program and their graduation or completion of their program, or Middlebury's confirmation of their resignation or expulsion. Conduct that takes place on or near Middlebury premises or property; occurs at or in connection with a Middlebury-related event; or occurs off-campus but may represent a threat to the safety of the Middlebury community or any of its members, the pursuit of its objectives, and/or the educational environment of others, may be subject to Middlebury's disciplinary process.

In cases where a student is found responsible for a policy violation while participating in any Middlebury program, the finding of responsibility may also be referred to the appropriate authority overseeing any additional Middlebury program in which the student is or will also be enrolled for other action as deemed appropriate (see also Section 10. F.6, above). This may include but is not limited to: further investigation; additional adjudication under existing policies (using only information gathered in the first disciplinary process, or using subsequently gathered information, or both, as deemed appropriate by the overseeing authority); disciplinary action; or other remedies or processes deemed appropriate by the authority overseeing the additional Middlebury program.

## 12. Pending Discipline (Students)

A student will not be permitted to graduate or receive academic credit (or certification, if applicable) for a program in which they are enrolled while a disciplinary matter is pending; the student's graduation, credit or certification will be held in abeyance until the matter is resolved. Nor will a student ordinarily be permitted to withdraw with a disciplinary matter pending. If a student nevertheless withdraws with a disciplinary matter pending, the withdrawal will be considered a resignation from Middlebury, and the student will have given up the opportunity to return to Middlebury. Notation will be made in the student's permanent file that the student has withdrawn with a disciplinary matter pending, or with an appeal of a disciplinary outcome pending, as appropriate. In extraordinary circumstances, however, the appropriate supervisory authority may, after appropriate consultation, a review of the case, and consideration of Middlebury's best interests, grant permission for a student to withdraw from Middlebury when a disciplinary matter is pending. Should the student be readmitted to Middlebury, the disciplinary matter must be resolved either before the student's return, or immediately upon the student's return.

## 13. Emergency Withdrawal, Suspension, or Expulsion (Students)